| | |
|---|---|
| KARNISHA WILLIAMS | CIVIL ACTION NO. 18-323-JWD-EWD |
| VERSUS | JUDGE JOHN W. deGRAVELLES |
| FRANCISCAN MISSIONAIRES OF OUR LADY HEALTH SYSTEM, INC., ET AL. | MAG. JUDGE ERIN WILDER-DOOMES |

## RULING AND ORDER

Pending before the Court is the Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendants, Franciscan Missionaries of Our Lady Health System, Inc. ("FMOL") and Our Lady of the Lake Hospital, Inc. ("OLOL")(collectively, "Defendants"). (Doc. 25). Plaintiff, Karnisha Williams ("Plaintiff" or "Williams"), opposes the motion. (Doc. 27). Defendants replied. (Doc. 30). Oral argument is not necessary. After careful consideration of the parties' arguments, the factual allegations, and the applicable law, and for the following reasons, Defendants' motion is granted in part and denied in part.

## I.     Relevant Factual and Procedural Background

Plaintiff is an African-American female who filed suit on March 21, 2018 against FMOL, alleging that she was discriminated against on the basis of race and gender during the course of her employment at OLOL. (Doc. 1). On April 11, 2018, Plaintiff amended her complaint, adding OLOL as a Defendant. (Doc. 4). Both Plaintiff's first and second amended complaints allege the following:

In April 2015, Plaintiff interviewed with OLOL's Kathleen Husain[1] for a position in the Heart Vascular Cardiovascular Unit ("HVCU"). (Doc. 4, p. 2). At the time of hiring, Plaintiff

---

[1] The amended complaint refers to "Husain" and "Hussain". The Court will utilize the spelling "Husain".

was completing her education to become a registered nurse, and she told Husain that she was interested in a position in the Intensive Care Unit ("ICU"). (*Id*.). Husain informed Plaintiff that newly-hired nurses typically work in the Telemetry division for approximately one year before transitioning to the ICU. (*Id*.). In June 2015, Plaintiff completed her last semester of "school" with an ICU nurse in the HVCU and subsequently began her orientation as a registered nurse in August 2015. (*Id*.).

In or around September 2015, Plaintiff informed Husain that she did not feel comfortable working with Ashley Hayes, who she "believed was behaving in a condescending manner towards her." (Doc. 4, p. 2). Plaintiff heard from several individuals that Hayes would speak about how she hated working with Plaintiff. (*Id*.). In November 2015, Plaintiff completed her orientation and began working in the Heart Vascular Ambulatory Unit ("HVAU") two months later. (Doc. 4, pp. 2-3). In April 2016, Plaintiff became a member of the Telemetry Council. (Doc. 4, p. 3). In May 2016, she completed Advanced Cardiac Life Support ("ACLS") training and "received a positive annual evaluation." (*Id*.). In June 2016, she became a Telemetry Council Chair. (*Id*.).

In July 2016, Plaintiff reported to her supervisor, John Wilson, that she was being "bullied" by a white co-worker. (Doc. 4, p. 3). Plaintiff informed Husain and Wilson that the co-worker, Rebecca Musika, the charge nurse, "stated that the family of Plaintiff's patient had requested a new nurse." (*Id*.). Plaintiff later learned, however, that the family did not actually make the request. (*Id*.). In fact, after Plaintiff was replaced, the family requested that Plaintiff return to them. (*Id*.). This request was denied by Musika. (*Id*.). Wilson confirmed that the family wanted Plaintiff to care for their relative. (*Id*.).

In August 2016, near the end of her first year in the Telemetry division, Plaintiff asked Husain about the possibility of training for, and eventually transferring to, a position in the ICU.

(Doc. 4, p. 3).  Husain met with the night supervisor, David Salbador, who informed Husain that Plaintiff was not ready to transfer to the ICU.  (Doc. 4, pp. 3-4).  Plaintiff claims that Salbador informed Husain that Plaintiff was not ready to transfer to ICU because Plaintiff isolated herself from the other nurses by not sitting in the nurse's station or engaging with them during her shifts.  (Doc. 4, p. 4).  Plaintiff concludes that "there was no reason to deny the transfer based on skill or training," and the decision was based on race.  (*Id*.).  Plaintiff later learned that certain white co-workers without an ACLS certification were permitted to train for the ICU.  (*Id*.).  Based on this information, Plaintiff requested to be transferred to another unit.  (*Id*.).

Plaintiff alleges that she "had begun to be bullied by the other white nurses on the unit and made complaint [sic]," but does not specify which unit or to whom she made a complaint.  (Doc. 4, p. 4).  Plaintiff met with the Chief Nursing Officer, Nicole Telhard, "to discuss her concerns regarding her career advancement."  (*Id*.).  She also met with Chief Operating Officer Terrie Sterling and complained "that she was unable to advance in her nursing career like white co-employees who had advanced to the ICU training."  (*Id*.).  Nevertheless, "[n]o action was taken to allow [Plaintiff] to advance in the same manner as other white co-employees in that unit."  (Doc. 4, pp. 4-5).  As a result, Plaintiff left OLOL in December 2017.  (Doc. 4, p. 5).

On July 11, 2017, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against "Our Lady of the Lake Reg. Med. Ctr." alleging discrimination on the basis of race and gender.  (Doc. 4-1).  In her first amended complaint, Plaintiff alleged that she amended the EEOC charge on August 1, 2017, to include a claim for retaliation.  (Doc. 4, p. 5).  On December 21, 2017, the EEOC issued its Dismissal and Notice of Rights, permitting Plaintiff to file a lawsuit within 90 days.  (Doc. 4-1, p. 3).

Plaintiff asserts claims for race and gender discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq*., and the Civil Rights Act of 1866, 42 U.S.C. § 1981.  (Doc. 4, p. 1).  Plaintiff also asserts state law claims for intentional infliction of emotional distress pursuant to La. Civ. Code Art. 2315 and employment discrimination under the Louisiana Employment Discrimination Law ("LEDL"), La. Rev. Stat. 23:332.  (Doc. 4, pp. 5-6).

In response to Plaintiff's first amended complaint, Defendants filed a Motion to Dismiss on April 25, 2018.  (Doc. 11).  This Court ruled on Defendants' motion on March 26, 2019.  (Doc. 20).  First, the Court found that FMOL was not Plaintiff's employer and was not responsible for any of the employment decisions forming the basis of Plaintiff's lawsuit.  (Doc. 20, p. 5).  The Court dismissed Plaintiff's Title VII and Section 1981 claims against FMOL without prejudice.  (Doc. 20, p. 6).  Second, the Court found that OLOL is a non-profit corporation and, therefore, is not an "employer" for purposes of Plaintiff's claims of employment discrimination under the LEDL, La. Rev. Stat. 23:302 and 23:967.  Therefore, Plaintiff's claims under the LEDL were dismissed without prejudice.  (Doc. 20, p. 7).  Third, the Court found that OLOL's alleged failure to permit Plaintiff to train for an ICU position was not an adverse employment action.  Also, Plaintiff did not allege sufficient facts to support a claim of constructive discharge.  Thus, the Court concluded that Plaintiff had not alleged facts sufficient to support an employment discrimination claim under Title VII and Section 1981.  (Doc. 20, pp. 9-10).  Fourth, the Court found that Plaintiff failed to allege an adverse employment action and the requisite causal connection to support a viable retaliation claim.  (Doc. 20, p. 11).  Therefore, the Court dismissed Plaintiff's retaliation claim without prejudice.  (*Id.*).  Fifth, the Court  found that Plaintiff's allegations were insufficient to support a claim for intentional infliction of emotional distress under Louisiana state law and dismissed that claim without prejudice.  (Doc. 20, p. 13).  In addition to the findings summarized

above, the Court noted that Plaintiff's complaint seemed to assert a claim for a hostile work environment but that this claim was not the subject of Defendants' motion to dismiss. (Doc. 20, p. 14, n. 6). Finally, the Court granted Plaintiff leave to amend her complaint. (Doc. 20, p. 14).

Plaintiff amended her complaint a second time on April 23, 2019. (Doc. 21). Plaintiff added factual allegations to Paragraphs 15 and 21. (Doc. 21, pp. 4-6). The second amended complaint is the same as the first amended complaint in all other respects.

Paragraph 15 explains that in August of 2016, Plaintiff was not able to train for the ICU and "found" that white co-employees who did not have ACLS certification to work on ICU were allowed to train. (Doc. 21, p. 4). Plaintiff explains that ICU/Critical Care nurses care for critically ill patients with life-threatening conditions. The patients require complex assessment, high-intensity therapies and interventions, and vigilant nursing. (*Id.*). Plaintiff specifically lists all of the areas in which an ICU nurse must be skilled. A benefit to having training and experience as a critical care nurse is that this training is required for most nurse anesthesia programs, which is the highest paid specialty program for nurses. (*Id.*). ICU nurses also have a low patient care ratio of one nurse to two patients. (Doc. 21, p. 5). Plaintiff also pleads that she was "switched from working night shift". This meant a "$5 pay difference and weekend nights was a $10 pay difference." (*Id.*). Plaintiff concludes Paragraph 15 of her second amended complaint by asserting that "the difference in Telem[e]try and ICU are substantially different and [T]elemetry does not require [as] much skill as ICU and [T]elemetry is lacking prestige as ICU [sic], thus the denial of ICU training is amount to [sic] an adverse employment action." (*Id.*). Plaintiff then avers that "without further information of what she needed to do to be trained, [she] recognized that she was not able to train as her white co-employees were able to train [in] ICU [and she] requested a transfer to another unit." (*Id.*).

Paragraph 21 of Plaintiff's second amended complaint now avers that Plaintiff "attempted" to amend her EEOC charge on August 1, 2017. (Doc. 21, p. 6). The "attempted" amendment sought to show that Plaintiff was being retaliated against by "other OLOL employees" discussing the facts of the complaints made by Plaintiff "in an attempt to intimidate or humiliate" her. (*Id*.). Additionally, since Plaintiff "ha[d]" to switch to the day shift and was not scheduled to work nights or weekends, she incurred a pay decrease. (*Id*.). Plaintiff alleges that she was "harassed and humiliated by being quizzed by random coworkers to determine her knowledge about various subject matter [sic], insinuating that she was not as smart as other co-employees," and Plaintiff was "ostracized for choosing to sit away from [the] nursing station and choosing to sit nearest sickest patient [sic]." (*Id*.). Plaintiff claims that "other nurses" would check Plaintiff's patients which would "humiliate" her because the inference was that she needed "oversight more than other co-employees". There were also "rumors" about Plaintiff's lack of nursing skills. (*Id*.).

Paragraph 21 of the second amended complaint concludes by stating that "[t]his retaliation was addressed [in] exhibit 3." (Doc. 21, pp. 6-7). However, there is no "exhibit 3" to the second amended complaint or to the first amended complaint in the record. There is also no explanation in the second amended complaint as to whether the "attempt" to amend the EEOC charge was successful or not and the reasons for same.

Defendants have filed a second motion to dismiss under Rule 12(b)(6) in response to Plaintiff's second amended complaint. (Doc. 25).

## II.    Motion to Dismiss Standard

In *Johnson v. City of Shelby, Miss*., 135 S. Ct. 346 (2014), the Supreme Court explained, "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for

imperfect statement of the legal theory supporting the claim asserted."  135 S. Ct. at 346-47

(citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has

explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true)
> (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant
> evidence of each element of a claim.  'Asking for [such] plausible grounds to infer
> [the element of a claim] *does not impose a probability requirement* at the pleading
> stage; it simply calls for enough fact to raise a reasonable expectation that discovery
> will reveal [that the elements of the claim existed].'

*Ormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the 'assumption of truth' to conclusions,
> factual allegations remain so entitled.  Once those factual allegations are identified,
> drawing on the court's judicial experience and common sense, the analysis is
> whether those facts, which need not be detailed or specific, allow 'the court to draw
> the reasonable inference that the defendant is liable for the misconduct alleged.'
> [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*,
> 55[0] U.S. at 556.  This analysis is not substantively different from that set forth in
> *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery
> must be undertaken in order to raise relevant information to support an element of
> the claim.  The standard, under the specific language of Fed. R. Civ. P. 8(a)(2),
> remains that the defendant be given adequate notice of the claim and the grounds
> upon which it is based.  The standard is met by the 'reasonable inference' the court
> must make that, with or without discovery, the facts set forth a plausible claim for
> relief under a particular theory of law provided that there is a 'reasonable
> expectation' that 'discovery will reveal relevant evidence of each element of the
> claim.'  *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3

(W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed

in the light most favorable to the plaintiff.  *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502-03

(5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" "has been asserted". *Id*. at 503.

## III.    Discussion

### A.    Claims that were previously dismissed and/or that Plaintiff concedes

Plaintiff re-asserts her claims against FMOL and her claims under the LEDL against OLOL in the second amended complaint. (Doc. 21). In the present motion, Defendants seek dismissal of Plaintiff's claims against FMOL and Plaintiff's claims under the LEDL against OLOL for the same reasons advanced in Defendants' first motion to dismiss. (Doc. 25-1, pp. 4-6). In response to the instant motion, Plaintiff admits that FMOL is not her employer, that all claims against FMOL should be dismissed, that the LEDL is not applicable to OLOL, and that all claims under the LEDL against OLOL should be dismissed. (Doc. 27, pp. 1-2). Therefore, the Court grants Defendants' second motion to dismiss Plaintiff's claims against FMOL and Plaintiff's claims against OLOL under the LEDL with prejudice.

Plaintiff also re-asserted her claim of intentional infliction of emotional distress under Louisiana state law. (Doc. 21, p. 7). Defendants again seek dismissal of this claim for the same reasons argued in their first motion to dismiss. (Doc. 25-1, pp. 6-9). Plaintiff does not directly address her claim of intentional infliction of emotional distress in her opposition. Plaintiff only states generally that the "first nine pages of" Defendants' memorandum in support of their motion is dedicated to claims "which Plaintiff does not contest". (Doc. 27, p. 2). Defendants address Plaintiff's claim of intentional infliction of emotional distress at pages six through nine; therefore, considering that Plaintiff "does not contest" the arguments in the first nine pages and does not specifically address her claim of intentional infliction of emotional distress, the Court concludes that Plaintiff has no opposition to Defendants' motion seeking dismissal of this claim. The Court

grants Defendants' second motion to dismiss in this regard and dismisses Plaintiff's claim of intentional infliction of emotional distress with prejudice.

## B. Claims under Title VII and 42 U.S.C. § 1981

"The analysis of discrimination claims under Section 1981 is identical to the analysis of Title VII claims." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins*., 869 F.3d 381, 386 (5th Cir. 2017). The only "substantive differences between the two statutes [is] their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). As neither of these differences is relevant here, the Court analyzes both claims jointly.

### 1. Discrimination

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees on the basis of race or sex, among other characteristics. 42 U.S.C. § 2000e-2(a). When relying on circumstantial evidence of discrimination, a Title VII/Section 1981 Plaintiff must first establish a *prima facie* case of employment discrimination by showing: (1) she belongs to a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) a similarly situated individual outside of her protected class was treated more favorably "under nearly identical circumstances." *Carr v. Sanderson Farms, Inc*., 665 F. App'x 335, 337 (5th Cir. 2016)(citing *Paske v. Fitzgerald*, 785 F.3d 977, 985 (5th Cir. 2015)).

#### a. Adverse Employment Action

Defendants argue that, despite amending her Complaint a second time, Plaintiff does not adequately allege that she suffered an adverse employment action. (Doc. 25-1, p. 10). "Adverse employment actions" are "ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco, Tex*., 764 F.3d 500,

503 (5th Cir. 2014)(internal quotation marks omitted). "An employment action that does not affect job duties, compensation, or benefits is not an adverse employment action." *Id*. (internal quotation marks omitted). Where there is only a "potential, tangential effect on increased compensation," the Fifth Circuit has consistently "held that a failure to train does not constitute an ultimate employment decision or an adverse employment action." *Brooks v. Firestone Polymers*, L.L.C. 640 F. App'x 393, 397 (5th Cir. 2016).

This Court previously ruled that Plaintiff's allegations contained in her first amended complaint did not sufficiently allege that OLOL's failure to permit her to train for an ICU position had any more than a "potential, tangential effect" on her salary. (Doc. 20, p. 9). This Court specifically noted that there was "no reference to salary at all" or any allegations that "a transfer to the ICU would be akin to a promotion in some other manner". (*Id*.). Plaintiff did not allege that the job duties, compensation, or benefits were in any way substantially different from the Telemetry position that she had before she left OLOL. (*Id*.). Plaintiff argued in her opposition to Defendants' first motion to dismiss that the ICU position included "increased future earnings" and that ICU nurses are able to advance to nurse anesthetics training. (Doc. 15, p. 8). However, as the Court noted, Plaintiff did not allege these facts in her complaint; therefore, they could not be considered when argued for the first time in opposition to a motion to dismiss. (Doc. 20, p. 9).

Plaintiff has now amended her complaint a second time. She now alleges that a benefit of critical care training is that nurses with that training meet the requirements for most nurse anesthesia programs, and nurse anesthetists are the highest paid specialty nurses. (Doc. 21, p. 4). Specialty nurses are not paid different rates, but the working conditions and duties are different, as represented by the different patient to nurse ratios. ICU nurses have a lower patient care ratio, which does not exceed two patients. In comparison, Telemetry nurses have a patient care ratio

which does not exceed six patients. Also, ICU nurses have more "prestige" than Telemetry nurses. (Doc. 21, p. 5).

Defendants argue that failure to receive better working conditions and what is perceived as a more prestigious position does not equate to an adverse employment decision. Plaintiff must plead that the desired position is one which significantly changes her benefits and compensation, which Plaintiff has not plead in her second amended complaint. Also, Defendants argue that an "interlocutory or mediate decision", meaning one that does not change Plaintiff's compensation and benefits immediately but may prepare her for a better position in the future, such as a nurse anesthetist, is not considered an "adverse employment decision". (Doc. 25-1, pp. 10-11 (citing *Brooks v. Firestone Polymers, LLC,* 70 F.Supp.3d 816, 836 (E.D. Tex. 2014)(internal citations omitted); *Robison v. Texas Dept. of Crim. Justice,* 94 F. App'x 225 (5th Cir. 2004)(plaintiff suffered no adverse employment action where he failed to submit evidence that he was "fired, reassigned, denied promotion, suffered a change in benefits, or disciplined"); *Mota v. Univ. of Tx. Houston Health Sci. Ctr.*, 261 F.3d 512 (5th Cir. 2001); *Watts v. Kroger Co.*, 170 F.3d 505 (5th Cir. 1999); *Burger v. Central Apartment Mgmt., Inc.*, 168 F.3d 875 (5th Cir. 1999); *Webb v. Cardiothoracic Surgery Assocs. of N. Tex.*, 139 F.3d 532 (5th Cir. 1998); *Mattern v. Eastman Kodak Co.*, 104 F.3d 702 (5th Cir. 1997), *cert. denied*, 522 U.S. 932)).

Defendants also re-iterate its argument sounding from its first motion to dismiss: a denial of training is not an adverse employment action. (Doc. 25-1, pp. 10-11 (citing *Hollimon v. Potter*, 365 F. App'x 546 (5th Cir. 2010)("[A] refusal to train is not an adverse employment action under Title VII"); *Roberson v. Game Stop/Babbage's*, 152 F. App'x 356 (5th Cir. 2005), *cert. denied*, 548 U.S. 924 (2006)(finding no adverse employment action where plaintiff was denied training on system); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398 (5th Cir. 1999)(no adverse

employment action where plaintiff was denied access to training on specialized filing software); *Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995); *Jones v. BP Amoco Chem. Co*., 10-1399, 2012 WL 1424986 (S.D. Tex. Apr. 23, 2012)(plaintiff's "failure to train" claim lacked merit because it was not an adverse employment action); *Wojciechowski v. Nat'l Oilwell Varco, L.P*., 763 F.Supp.2d 832 (S.D. Tex. 2011)(plaintiff's failure to train claim failed under Fifth Circuit precedent); *Veal v. Schlumberger Technology Corp.*, 2006 WL 237006 (S.D. Tex. Jan. 31, 2006)(dismissing plaintiff's denial of training claims because plaintiff did not show an adverse employment action))).

In response, Plaintiff quotes Paragraph 15 of her second amended complaint and relies on her pleading to show a sufficiently alleged adverse employment action. Plaintiff does not cite to any supporting legal authority other than the general standards governing motions under Rule 12. (Doc. 27, pp. 3-5).

The Court first turns to Defendants' position that "interlocutory or mediate decisions", decisions other than the ultimate employment decision, are not considered "adverse employment decisions". This general statement is not applicable in the manner proposed by Defendants. In *Mattern v. Eastman Kodak Co*., 104 F.3d 702 (5th Cir. 1997), one of the cases cited by Defendants, it was found that only claims concerning "ultimate" employment decisions were cognizable under Title VII. However, this standard is applicable solely to retaliation claims under Title VII, not discrimination claims under Title VII. Therefore, *Mattern*, and any other cases relying upon *Mattern* or based on the same reasoning, are not applicable to Plaintiff's claims of discrimination based on race and gender and whether she sufficiently alleged an adverse employment decision. *See, e.g., Durkin v. Henderson*, 2001 WL 1254865, *2 (E.D. La. Oct. 17, 2001)(explaining that *Mattern* does not apply to discrimination claims).

For discrimination claims under Title VII, it is unlawful to "limit, segregate, or classify employees or applicants for employment in a way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his [or her] status as an employee" based on one of the protected classes, including race or gender. 42 U.S.C. § 2000e-2(a)(2). Plaintiff has alleged that she was denied training for the ICU, which she alleges is a "requirement" to become a nurse anesthetist or a nurse practitioner, both specialty nursing positions that are more highly compensated than Plaintiff's Telemetry position or the ICU position. Therefore, Plaintiff alleges that the denial to train for ICU is an "adverse employment action".

Turning to Defendants' second argument, that a failure to train is not an adverse employment action, in *Durkin*, 2001 WL 1254865, *2, the plaintiff alleged that he was denied training that was necessary for a promotion, based on his race. Relying upon the Fifth Circuit's findings in *Carpenter v. Steven F. Austin State University*, 706 F.2d 608 (5th Cir. 1983) and *Vaughn v. Edel*, 918 F.2d 517 (5th Cir. 1990), the Eastern District of Louisiana found that the plaintiff sufficiently plead an "adverse employment action" for purposes of Rule 12(b)(6). In *Carpenter,* the Fifth Circuit found that the development of employment and promotion qualifications that incorporated educational requirements that typically predominated in whites (a diploma, for example) would tend to adversely affect the employment status of a person of a minority race (*i.e.*, disparate impact due to race discrimination). *Carpenter*, 706 F.2d at 620. Similarly, in *Vaughn*, the Fifth Circuit found that the employer discriminated against the plaintiff by withholding honest evaluations of the plaintiff out of a fear of being accused of unfairly criticizing her based on race, which was found to deprive the plaintiff of the opportunity to improve herself professionally. The deprivation of an opportunity to improve oneself professionally was found to be an adverse employment action. *Vaughn*, 918 F.2d at 523. Therefore, just as the Eastern

District found in *Durkin*, if Plaintiff's allegations are true, Defendants' alleged denial of training precluded her advancement as a nurse, which has been found to tend to deprive or adversely affect Plaintiff's employment status.

The cases upon which Defendants rely hold that denial of training is not an adverse employment action under Title VII. *Hollimon*, 365 F. App'x 546; *Roberson*, 152 F. App'x 356; *Shackelford*, 190 F.3d 398; *Dollis*, 77 F.3d 777; *Jones*, 2012 WL 1424986; *Wojciechowski*, 763 F.Supp.2d 832. In those cases, the only argued "tangential effect" of the failure to train was a "potential" effect on compensation, which is what Defendants argue here, and these cases were decided on summary judgment. The distinction between those cases and the matter presently before the Court is the opportunity for promotion and advancement. Defendants do not address Plaintiff's allegations that the denial to train her for a position in ICU means that she was denied the opportunity to meet the requirements to advance to a nurse anesthetist position and that she could not advance to the prestigious position of ICU nurse with more appealing working conditions and with more focused and intricate patient care. The Court finds that this distinction is not one that can be overlooked. *See, Durkin*, 2001 WL 1254865 (where the defendants' motion to dismiss was denied because the denial to train equated to a denial of an opportunity to be promoted, distinguishing *Shackelford* and *Dollis*); *Darby v. Calumet Packaging, LLC,* 2018 WL 5117027, *5 (W.D. La. Oct. 4, 2018)(where *Shackelford* was distinguished because it was a summary judgment case; motion to dismiss was denied because the plaintiff alleged that he was denied training for a position with greater responsibility based on race and age that equated to a denial of a promotion). This matter is more similar to those cases distinguishing the cases relied upon by Defendants, *i.e., Durkin* and *Darby*, where it was a motion to dismiss before the court, not a motion for summary

judgment, and there was an element of promotion or improvement in the employment status involved in some way.

While Plaintiff's allegations of an adverse employment effect are lean and subject to proof at trial, they are sufficiently definite and complete to make dismissal under Rule 12(b)(6) inappropriate. Plaintiff is entitled to offer evidence to support her claims and has stated a claim on the face of her operative complaint for which relief may be granted. Therefore, the Court denies Defendants' motion on these grounds.

Because Plaintiff has sufficiently alleged an adverse employment action for failure to train as set forth above, it is not necessary for the Court to determine whether Plaintiff sufficiently alleged that she was constructively discharged as her "adverse employment action".

### b. Allegations of Sex or Gender Discrimination

Plaintiff contends that she was discriminated against based on her race and her sex or gender when she was denied training in the ICU, while her white, female co-workers with fewer certifications and less training were given training in the ICU. Defendants contend that Plaintiff has not plead sufficient facts to support a claim of discrimination based on sex or gender. Defendants are not contesting Plaintiff's allegations of discrimination based on race. (Doc. 25-1, p. 13).

Defendants specifically argue that Plaintiff only references sex discrimination one time, at Paragraph 26 of her second amended complaint, which Defendants contend was found to be insufficient after the first motion to dismiss and has not been amended since. Plaintiff avers that she "seeks relief pursuant to La. R.S. 23:301 et seq. for race and gender and/or sex discrimination". (Doc. 21, p. 7). Plaintiff does not address Defendants' argument in her opposition to Defendants' motion to dismiss.

When the Court ruled on Defendants' first motion to dismiss, it found that Plaintiff had not sufficiently plead a claim for discrimination because Plaintiff did not sufficiently plead an adverse employment action. The Court then noted, "Because the Court reaches the conclusion that Williams has not stated a viable Title VII employment discrimination claim under either theory of liability, it will not address the defendants' alternative argument that Williams has not adequately alleged facts to support a claim specifically for sex discrimination." (Doc. 20, p. 10, n. 4). Since the Court has reached a different finding on Defendants' second motion to dismiss, that Plaintiff has sufficiently plead facts supporting an adverse employment action, the Court turns to whether Plaintiff's allegations support a claim for discrimination based on sex or gender.

For the purposes of a motion to dismiss, the Court must accept the following factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). In her second amended complaint, Plaintiff alleges that she "reported bull[y]ing by another white nurse co-employee to her supervisor". (Doc. 21, p. 3). While Plaintiff specifically alleges the race of her co-employee, she does not allege the gender. Plaintiff continues by alleging facts regarding a request to train and transfer to the ICU in August of 2016. (Doc. 21, p. 3). Plaintiff alleges that David Salbador, the night supervisor, advised that Plaintiff was not ready to train for the ICU. (Doc. 21, pp. 3-4). Plaintiff "asserts that denial was race based [sic] decision." (Doc. 21, p. 4). Again, Plaintiff makes no allegations of discrimination based on gender.

As set forth above, Plaintiff amended Paragraph 15 to expand on her denial of training claim. She explicitly alleges that she "found that other white co-employees did not have … certification to work on the ICU, however, they were allowed to train". (Doc. 21, p. 4). Plaintiff claims that she "recognized that she was not able to train as her white co-employees were able to

train".  (Doc. 21, p. 5).  Again, Plaintiff's complaint reflects specific allegations related to race and avoids identifying gender.

Plaintiff continues by averring that she had begun to be bullied "by the other white nurses on the unit".  (Doc. 21, p. 5).  In September 2016, Plaintiff met with the Chief Operating Officer and complained that she was unable to "advance in her nursing career like white co-employees".  (Doc. 21, p. 6).  No action was allegedly taken "to allow [Plaintiff] to advance in the same manner as other white co-employees".  (*Id.*).  Plaintiff sought other employment "because she was not allowed to advance in her nursing as other white co-employee nurses".  (*Id.*).

Defendants are correct that Plaintiff does not allege facts or claims related to discrimination based on gender until Paragraph 26 of the second amended complaint, where she "seeks relief pursuant to La. R.S. 23:301 et seq. for race and gender and/or sex discrimination, hostile work environment[.]… [and] under La. R.S. 23:332 et seq. for race and gender and/or sex discrimination, hostile work environment."  (Doc. 21, p. 7).  Noticeably absent from Plaintiff's operative complaint are any factual allegations that support a claim of discrimination, under federal or state law, based on gender.  The second amended complaint is completely void of any factual allegations related to discrimination based on gender, with the only mention being Paragraph 26 as quoted above.

Based on the foregoing, it is clear that Plaintiff's complaint is inadequate in pleading "enough facts to state a claim to relief that is plausible on its face".  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Also, Plaintiff offered no argument in opposition to this point in her memorandum.  Therefore, Defendants' motion seeking to dismiss Plaintiff's claims of discrimination based on sex or gender is granted.

## 2.      Retaliation

To make out a *prima facie* case of retaliation under Title VII, Williams must allege that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009).  For a retaliation claim, an adverse employment action must be "materially adverse," such that it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. and Santa Fe. R.R. Co. v. White*, 548 U.S. 53, 68 (2006).  The Supreme Court has noted that "it is important to separate significant from trivial harms," and "petty slights or minor annoyances that often take place at work and that all employees experience" cannot constitute adverse employment actions.  *Id.*

The Court ruled on Defendants' first motion to dismiss that Plaintiff's retaliation claim was dismissed without prejudice because Plaintiff "failed to allege either an adverse employment action or the requisite causal connection to support a viable retaliation claim".  (Doc. 20, p. 11). The Court highlighted that Plaintiff filed her EEOC charge seven months *after* she left her employment at OLOL.  (*Id.*).  The Court also noted that any "discussion" that took place at OLOL *after* Plaintiff left her employment "cannot constitute a materially adverse action for the purposes of an actionable retaliation claim".  (Id.).

Subsequently, Plaintiff amended her complaint a second time and plead her claim of retaliation in Paragraph 21:

> July 11, 2017, Ms. Williams filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission, Charge No. [sic], attached as Ex. 1.  August 1, 2017, Mrs. Williams attempted to amend her complaint to show she was being retaliated against by having other OLOL employees discuss the facts of the complaints made by Plaintiff in an attempt to intimidate or humiliate Mrs. Williams.  Additionally, there was a material pay decrease – by having to switch to

days, Mrs. Williams was not scheduled to work nights and weekends which could total a decrease up to $10 per hour. Finally, Mrs. Williams was harassed and humiliated by being quizzed by random coworkers to determine her knowledge about various subject matter, insinuating that she was not as smart as other co-employees and Mrs. Williams was ostracized for choosing to sit away from nursing station and choosing to sit nearest sickest patient. Other nurses would intentionally check the patients assigned to Mrs. Williams which would humiliate her as the inference was Plaintiff needed oversight more than other co-employees and rumors rampant [sic] about the lack of Plaintiff's nursing skills on the unit despite no poor patient outcomes documented. This retaliation was addressed exhibit 3. (Doc. 21, pp. 6-7).

Also, Plaintiff alleges that she left her employment with OLOL on December 8, 2017. (Doc. 21, p. 6).

In the instant motion, Defendants challenge Plaintiff's retaliation claim on two grounds: (1) that Plaintiff failed to exhaust her administrative remedies prior to bringing her retaliation claim; and (2) that even if Plaintiff timely exhausted her administrative remedies, she fails to state a plausible claim of retaliation. The Court first turns to whether Plaintiff properly exhausted her administrative remedies prior to bringing her retaliation claim.

### a. Exhaustion of Administrative Remedies

The first issue is whether Plaintiff properly exhausted her claim for retaliation by filing her EEOC charge and "attempting" to amend it. In short, Defendants argue that Plaintiff's EEOC charge filed on July 11, 2017, did not mention retaliation. The scope of the charge was limited to claims of discrimination based on race and sex. (Doc. 25-1, p. 14). Because Plaintiff's retaliation claim was not the subject of the only EEOC charge filed, Plaintiff did not exhaust her administrative remedies with regard to that claim, warranting dismissal. (*Id.*). Defendants then acknowledge that Plaintiff alleges that she "attempted" to amend her EEOC charge. However, because this amendment was never made, Defendants were never "on notice", which is the purpose behind the requirement of exhausting administrative remedies prior to filing suit. (Doc. 25-1, pp.

14-15). Thus, Plaintiff never filed a second or amended EEOC charge encompassing the retaliation claim.

Plaintiff's response to Defendants' second motion seeking to dismiss her retaliation claim is confusing. Plaintiff argues:

> The retaliation laws were put in place to make sure that there is no chilling affect on the rights of workers to make and participate in claims of EEOC discrimination, thus, it is logical extension of the law that retaliation can be the discussions of Mrs. Williams after the termination of her employment particularly in a professional setting as in nursing. If OLOL were allowed to infer that Mrs. Williams is a bad nurse after the termination of her employment then the nurses who may come forward would be chilled from exercising their right to EEOC investigation. Thus, there is a retaliation claim that could be fleshed out through the . [Sic]. Thus, there is an allegation of retaliatory bullying after complaining that she was not able to move to the ICU. (Doc. 27, p. 8).

Although generally confusing, with particular regard to the exhaustion issue, the Court highlights the statement that "discussions" took place "after the termination" of Plaintiff's employment. Plaintiff's first amended complaint and the first motion to dismiss addressed that the factual basis of Plaintiff's retaliation claim occurred *after* she left the employment of OLOL. (Doc. 20, p. 11). However, as quoted above, Plaintiff's second amended complaint reflects that Plaintiff filed her EEOC charge in July 2017; that she attempted to amend the charge in August 2017; and that she "left OLOL December 8, 2017". (Doc. 21, p. 6). Therefore, based on the face of the second amended complaint, it appears that Plaintiff filed her EEOC charge; that the alleged retaliatory "bullying", "intimidation", and "humiliation" occurred in response; and then, Plaintiff decided to leave OLOL.

Interestingly, Plaintiff's opposition to Defendants' instant motion, quoted above, contradicts the plain reading of her second amended complaint. This leads the Court to question whether the "December 8, 2017" year is correct or was intended to read as December of "2016".

Regardless, Plaintiff argues, as she did with regard to the first motion to dismiss, that the alleged retaliatory behavior took place many months *after* she was no longer employed with OLOL and in response to her EEOC charge.

Noticeably absent from Plaintiff's opposition is an explanation as to why the EEOC charge was not amended and how the scope of the EEOC charge that was filed encompasses a claim for retaliation.

Raising a claim with the EEOC is a jurisdictional prerequisite to any Title VII suit. 42 U.S.C. § 2000e-16(c); *Brown v. GSA*, 425 U.S. 820, 833, 96 S.Ct. 1961, 1968, 48 L.Ed. 2d 402, 411 (1976); *Ray v. Freeman*, 626 F.2d 439, 442 (5th Cir. 1980); *Hoffman v. Boeing*, 596 F.2d 683, 685 (5th Cir. 1979). A judicial complaint that does not allege the exhaustion of administrative remedies is subject to dismissal. The scope of a judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970). The Fifth Circuit in *Sanchez* further explained:

> The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is not filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action. Thus[,] it is obvious that the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation. Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

> A more exacting rule would be destructive of the logic of the statutory scheme, for it would impede the ability of the Commission to effect voluntary compliance. If an alleged discriminator knew that a particular issue which was the subject of EEOC conciliation efforts could never be the subject of a civil action, his incentive toward voluntary compliance would be lessened.

*Sanchez*, 431 F.2d at 466.

However, the scope of the inquiry is not limited to the exact charge brought to the EEOC. *Stewart v. May Dep't Stores*, 294 F.Supp.2d 841, 848 (M.D. La. 2003). The plaintiff's cause of action may be based, "not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." *Fine v. G.A.F. Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993).

In this case, the threat of an employer or co-workers retaliating against Plaintiff for filing a charge with the EEOC could dissuade someone from filing or supporting a charge; however, Plaintiff's failure to allege a retaliation claim in her EEOC charge procedurally defaults her claim because she did not exhaust her administrative remedies. Plaintiff's EEOC charge clearly asserts only a claim of discrimination based on race and gender. (Doc. 25-2). Plaintiff does not dispute this. Plaintiff simply alleges that she "attempted" to amend her charge to assert a claim of retaliation. Plaintiff neither provides additional information as to the "attempted" amendment, nor does she explain why she could not successfully amend the charge. However, the failed amendment equates to a failure to exhaust her administrative remedies with regard to the retaliation claims. *See, Hazeur v. Federal Warranty Service Corp.*, 2000 WL 365013, *2 (E.D. La. Apr. 7, 2000)("Thus, because plaintiff's attempt to amend her charge of discrimination cannot, as a matter of law, relate back to her original charge and thus plaintiff failed to timely exhaust her administrative remedies, the [c]ourt finds that defendant … cannot be held liable for plaintiff's Title VII claims."); *McKenzie v. St. Tammany Parish School Bd.*, 2006 WL 2054391, *2-3 (E.D. La. July 19, 2006) (applying *Morgan*, 536 U.S. 101, and *Staples v. Reckamp*, 2005 WL 3536281 (W.D. La. Dec. 22, 2005 ) finding that a plaintiff is required to demonstrate that he exhausted his

22

administrative remedies with respect to each act of retaliation by filing a new charge or timely amending an existing charge and the plaintiff was unable to maintain a retaliation claim that he failed to exhaust); and *Walton-Lentz v. Innophos, Inc*., 2011 WL 721491, *4 (M.D. La. Feb. 22, 2011) (when an amendment to an EEOC charge sets forth a new theory of recovery, such as retaliatory discharge versus a hostile work environment claim, then the amendment cannot relate back to the original charge).

Thus, while Plaintiff's charge put Defendants on notice of her discrimination claim, Plaintiff's retaliation claim was never properly asserted and could not reasonably be expected to grow from the charge of discrimination based on race and gender. *Sanchez*, 431 F.2d at 466; *Fine*, 995 F.2d at 578.

To drive this point home, in *Simmons–Myers v. Caesars Entertainment Corp.*, 515 F. App'x 269 (5th Cir. 2013), *cert denied,* ––– U.S. –––, 134 S.Ct. 117, 187 L.Ed.2d 36 (2013), an employee filed an EEOC charge claiming discrimination based on sex. *Id.* at 271. Plaintiff was subsequently terminated, yet she failed to file a second charge related to the termination prior to filing suit. The Court dismissed the gender discrimination and retaliation claim arising out of her termination without prejudice. *Id.* at 273. The Court explained, "Her termination was a separate employment event for which [Plaintiff] was required to file a supplemental claim, or at the very least, amend her original EEOC charge." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)).

The Court finds *Simmons–Myers* applicable to the instant matter. In *Simmons-Myers*, the Fifth Circuit found that the Plaintiff had not exhausted retaliation *and* discrimination claims, much like the matter presently before the Court. Defendants, here, do not argue that Plaintiff failed to exhaust her administrative remedies with regard to her discrimination claims based on race and

gender. Rather, it is only the retaliation claim for which Plaintiff allegedly failed to exhaust her administrative remedies. Much like *Simmons-Myers*, Plaintiff did not inform the EEOC of her retaliation claims, did not amend her EEOC charge, and did not file a second and separate charge. Given the factual similarities of this case with *Simmons-Myers* and the ineffectiveness of the "attempted" amendment to the charge of discrimination, this Court holds that the EEOC charge of discrimination based on race and gender was insufficient to put Defendants on notice of a retaliation claim. *Manning v. Chevron Chem. Co*., 332 F.3d 874, 878 (5th Cir. 2003). Because Plaintiff did not include any allegations of retaliation in her EEOC charge and did not successfully and timely amend her EEOC charge, her retaliation claim is not properly before the Court, and Defendants are entitled to dismissal of Plaintiff's retaliation claim. Plaintiff's retaliation claim is thus dismissed without prejudice for failure to exhaust her administrative remedies. *Simmons-Myers*, 515 F. App'x 269; *Galarza v. Ochsner Health Sys., Inc*., No. Civ. A. 12-722, 2014 WL 1431708, *8 (M.D. La. Apr. 14, 2014).

### b.    Failure to State a Claim

As set forth above, the Court finds that Plaintiff failed to exhaust her administrative remedies with regard to her retaliation claim prior to filing suit. Therefore, the retaliation claim is not procedurally before the Court and is dismissed without prejudice. The Court does not reach Defendants' second argument, that Plaintiff failed plead a *prima facie* case of retaliation under federal law.

### C.    Other Claims

Plaintiff generally states claims of "harassment" and a "hostile work environment" under Louisiana state law. (Doc. 21, p. 7). Defendants seek to dismiss these claims in its second motion to dismiss. (Doc. 25-1, pp. 17-20). Defendants specifically argue that Plaintiff failed to exhaust

her administrative remedies and fails to state a claim upon which relief can be granted as to a "hostile work environment". (*Id.*). As Defendants correctly point out in their reply memorandum, Plaintiff offered no opposition to the dismissal of the "harassment" and "hostile work environment" claims as vaguely set forth in Paragraph 26 of the second amended complaint. (Doc. 27; Doc. 30, p. 1).

"'The Fifth Circuit makes it clear that when a party does not address an issue in [her] brief to the district court, that failure constitutes a waiver on appeal.'" *JMCB, LLC v. Bd. of Commerce & Indus.*, 336 F.Supp.3d 620, 634 (M.D. La. 2018)(quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F.Supp.2d 738, 748, n. 10 (S.D. Tex. 2003)(citations omitted)); *see also United States v. Reagan*, 596 F.3d 251, 254-55 (5th Cir. 2010)(defendant's failure to offer any "arguments or explanation … is a failure to brief and constitutes waiver"). "'By analogy, failure to brief an argument in the district court waives that argument in that court.'" *JMCB*, 336 F.Supp.3d at 634 (quoting *Magee*, 261 F.Supp.2d at 748, n. 10); *see also Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014)("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."(citations omitted)); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, *5 (S.D. Tex. Oct. 26, 2010)(granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

Applying the waiver standard, the Court will dismiss Plaintiff's claims of "harassment" and "hostile work environment". Plaintiff failed to respond to Defendants' arguments about these claims. The Court finds that Plaintiff has effectively abandoned these claims. *See JMCB*, 336 F.Supp.3d at 634 ("Plaintiff did not respond to the substance of any of [defendant's] arguments …. On this ground alone, the Court could dismiss Plaintiff's Amended Complaint." (numerous

internal citations omitted)); *see also Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F.Supp.3d 663, 672 (M.D. La. 2019)(finding that, because plaintiff failed to respond to defendant's argument on an issue, the Court could conclude that a policy exclusion applied (citing, *inter alia, JMCB*, 336 F.Supp.3d at 634)).  Therefore, Plaintiff's claims of "harassment" and "hostile work environment" in her second amended complaint are dismissed.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that Franciscan Missionaries of Our Lady Health System, Inc. and Our Lady of the Lake Hospital, Inc.'s Motion to Dismiss (Doc. 25) is hereby **GRANTED IN PART AND DENIED IN PART**;

Defendants' motion is **GRANTED** in that all claims adverse to Franciscan Missionaries of Our Lady Health System, Inc. are dismissed with prejudice; all claims under the Louisiana Employment Discrimination Law against Our Lady of the Lake Hospital, Inc. are dismissed with prejudice; Plaintiff's claim of intentional infliction of emotion distress is dismissed with prejudice; Plaintiff's claim of discrimination based on sex or gender under Title 7 and Section 1981 are dismissed with prejudice; Plaintiff's claim of retaliation under Title 7 and Section 1981 is dismissed without prejudice due to Plaintiff's failure to exhaust administrative remedies; Plaintiff's claim of harassment is dismissed with prejudice; and Plaintiff's claim of hostile work environment is dismissed with prejudice.

Defendant's motion is **DENIED** as to Plaintiff's claim of discrimination based on race under Title 7 and Section 1981, and these claims remain pending.

Signed in Baton Rouge, Louisiana, on February 18, 2020.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**